UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REBECCA ROYER, an individual; and RICHARD TURNER, an individual, <br><br>    Plaintiffs, <br><br>v. <br><br>BAYTECH CORPORATION; LANDI RENZO USA CORPORATION; LANDI RENZO S.p.A.; STEFANO LANDI; ANDREA LANDI; CLAUDIO CARNEVALE; and DOES 1-10, Inclusive, <br><br>    Defendants. | 3:11-CV-00833-LRH-(WGC) <br><br> ORDER |

Before the court is Defendants' Motion to Stay and Compel Arbitration (#13). Plaintiffs filed an opposition (#17), and Defendants replied (#18).

### I. Facts and Procedural History

The relevant facts as alleged by Plaintiffs are as follow. Plaintiffs Rebecca Royer ("Royer") and Richard Turner ("Turner") are individuals who reside in the State of Nevada. (Compl. ¶¶ 1-2 (#1-2).) Defendant Baytech Corporation ("Baytech") is a California corporation registered to do business in the State of Nevada, defendant Landi Renzo USA Corporation ("Landi USA") is a Delaware corporation, and defendant Landi Renzo S.p.A. ("Landi SpA") is an Italian company and the parent company for Landi USA. (Id. ¶¶ 3-6.) Defendant Stefano Landi is a resident of Italy, defendant Andrea Landi is a resident of California, and defendant Claudio Carnevale is a resident

of Italy.  (Id. ¶¶ 6-8.)

   Royer and Turner formed Baytech in 1991 with the purpose of offering a technology known as compressed natural gas systems, which could be used to modify existing engines to run on natural gas instead of gasoline.  (Id. ¶¶ 13, 15.)  Royer and Turner were the sole two owners of Baytech.  (Id.)  Landi USA and Landi SpA subsequently approached Baytech with the purpose of acquiring the company from Royer and Turner.  (Id. ¶ 21.)

   On July 29, 2010, Royer and Turner entered into a Stock Purchase Agreement ("Purchase Agreement") with Landi USA and Landi SpA to sell their ownership interests in Baytech to Landi USA for the price of $15,000,000.  (Id. ¶ 22.)  Under the Purchase Agreement, Landi USA acquired all of Baytech's intellectual property including "trade secrets, know-how, and other confidential information, and . . . any and all information related to process of certifying fuel injection systems for alternative fuel motor vehicles." (Compl. ¶ 26 (#1-2); Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 3.13 (#13).)

   The Purchase Agreement also contains an arbitration clause providing that "any unresolved controversy or claim arising from or relating to this Agreement . . . shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, then in effect." (Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 10.11 (#13).) Additionally, the Purchase Agreement contains a clause stating that "[t]he recitals, schedules, exhibits and annexes to this Agreement are incorporated herein and made a part hereof as if fully set forth at length herein."  (Id. Ex. 1 § 10.7.)

   Both Plaintiffs entered into three year Continuing Employment Agreements with Baytech concurrently with the Purchase Agreement, the agreements of which were personally guaranteed by Landi USA. (Compl. ¶ 23.)  Royer's Employment Agreement provided that she would continue to act as President of Baytech for three years.  (Id. ¶ 24.)  Turner's Employment Agreement provided that he would act as Vice President, Finance and Business Development of Baytech for three years.

(Id. ¶ 25.) Each Employment agreement contains a clause stating that the Employment Agreement and its exhibits "constitute the entire agreement between the parties hereto relating to the subject matter hereof, and supersedes all prior agreements, whether oral or written, with respect to the same." (Defs.' Mot. Stay and Compel Arbitration Exs. 2, 3 ¶ 9 (#13).) The same paragraph in the Employment Agreements states that "[t]he parties' duties, obligations and responsibilities arising out of [the Employment Agreement] are separate and shall apply independently from any other obligations or responsibilities arising from the [Purchase Agreement]." (Id.) Each Employment Agreement further stipulates that "[a]ny Proceeding arising out of or relating to this Agreement shall be brought in the courts of the State of Nevada." (Id. Exs. 2, 3 ¶ 16.)

On April 15, 2011, Landi USA and Landi SpA sent a demand alleging a breach of the Employment Agreements by Royer and Turner and requesting indemnification under the Purchase Agreement for more than $5,000,000 in undefined damages resulting from the breach. (Compl. ¶ 95 (#1-2).) On April 25, 2011, Baytech issued a Notice of Breach to Royer claiming that she had violated her Employment Agreement through a variety of wrongful actions. (Id. ¶ 99.)

On June 22, 2011, at Baytech's Board of Directors meeting, Stefano Landi, Andrea Landi, and Claudio Carnevale voted to terminate Royer for alleged breaches of her Employment Agreement. (Id. ¶ 106.) On the same day, Stefano Landi, Andrea Landi, and Claudio Carnevale issued a Notice of Default to Turner under his Employment Agreement. (Id. ¶ 112.) On July 27, 2011, these defendants terminated Turner. (Id. ¶ 112 (#1-2).) Defendants issued a Notice of Termination on July 28, 2011. (Id.) Defendants concurrently removed Royer and Turner from their positions as directors of Baytech. (Id. ¶ 114.)

Plaintiffs filed a Complaint (#1-2) against Defendants in Nevada state court on October 17, 2011. The Complaint raises causes of action against Defendants for (1) fraud, (2) constructive fraud, (3) negligent misrepresentation, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) breach of contract, (7) contractual breach of implied covenant

3

of good faith and fair dealing, (8) tortious breach of implied covenant of good faith and fair dealing, (9) breach of fiduciary duties, (10) intentional interference with contractual relations, (11) conspiracy, and (12) breach of NRS Chapter 608. The Complaint also seeks injunctive and declaratory relief. On November 17, 2011, the action was removed to this court by Defendants (#1).

Defendants Baytech, Landi USA, and Andrea Landi filed a Motion to Stay Proceedings and Compel Arbitration (#13) on December 12, 2011. Plaintiffs filed their Response (#16) on January 17, 2012. On February 3, 2012, Defendants filed their Reply (#18).

**II.    Legal Standard**

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are enforced under sections 3 and 4 of the FAA, which provide "two parallel devices for enforcing an arbitration agreement." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 22 (1983). Section 3 gives courts the power to provide "a stay of litigation in any case raising a dispute referable to arbitration," while section 4 empowers courts to provide "an affirmative order to engage in arbitration." Id.; 9 U.S.C. §§ 3-4.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hosp., 460 U.S. at 24. See also Southland Corp. v. Keating, 465 U.S. 1, 2 (1984) (finding that the FAA "declared a national policy favoring arbitration"); Perry v. Thomas, 482 U.S. 483, 489 (1987) (stating that the FAA "embodies a clear federal policy requiring arbitration" when there is a written arbitration agreement relating to interstate commerce). Thus, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960).

Despite this strong federal policy in favor of arbitration, arbitration is a "matter of contract," and no party is required to submit to arbitration "any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolders, Inc., 537 U.S. 79, 79 (2002) (quoting United Steelworkers, 363 U.S. at 582). A court's discretion for compelling arbitration is thus limited to a two step process of "determining (1) whether a valid agreement to arbitrate exists, and, if it does; (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). A party cannot be ordered to arbitrate unless there is "an express, unequivocal agreement to that effect." Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Company, Ltd., 636 F.2d 51, 54 (3d Cir. 1980)).

However, given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. Accord Int'l Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 618, 764 P.2d 478, 480 (1988) ("Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration."). The party resisting arbitration bears the burden of proving that the claims are not covered under the arbitration agreement. Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000).

An arbitration clause that covers matters "arising out of" or "relating to" a contract "constitute[s] the broadest language the parties could reasonably use to subject their disputes to [arbitration]." State ex rel. Masto v. Second Judicial Dist. Court ex rel. County of Washoe, 125 Nev. 37, 45 n.5, 199 P.3d 828, 833 n.5 (Nev. 2009) (quoting Fleet Tire Serv. v. Oliver Rubber, 118 F.3d 619, 621 (8th Cir. 1997)). Under such language, an issue need only "touch matters" covered by the contract to be subject to the arbitration clause. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716,

5

720 (9th Cir. 1999). "[T]he question is whether the wrongful conduct alleged in the complaint is related to the agreement that contains [the arbitration clause]." Law Offices of Bradley J. Hofland, P.C. v. McFarling, No. 2:06-cv-00898-BES-LRL, 2007 WL 1074096, at *4 (D. Nev. Apr. 9, 2007).

### III. Discussion

#### A. Whether the Purchase Agreement and Employment Agreement Are Integrated

Under Nevada law, "two instruments are presumed to be a single contract if (1) they are contemporaneously executed, (2) they concern the same subject matter, and (3) one of the instruments refers to the other." Whitemaine v. Aniskovich, 124 Nev. 302, 308, 183 P.3d 137, 141 (Nev. 2008). See also Collins v. Union Federal Sav. & Loan Ass'n, 99 Nev. 284, 292, 662 P.2d 610, 615 (Nev. 1983) ("The general presumption is that where two or more written instruments are executed contemporaneously the documents evidence but a single contract if they relate to the same subject matter and one of the two refers to the other").

Here, the Employment Agreements and the Purchase Agreement were executed contemporaneously. The subject matters of the contracts are also deeply interconnected. Under the Purchase Agreement, Landi USA acquired Baytech's "trade secrets, know-how, and other confidential information," which could only be obtained through Royer and Turner, the sole owners of Baytech. (Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 3.13 (#13).) Royer's Employment Agreement, which tasks her with the responsibility of "the effective training of the Company's and Landi Renzo Group's employees in the art of the Company's engineering practices," makes clear that the employment of at least Royer is indispensable to acquiring the intellectual property referred to in the Purchase Agreement. (Id. Ex. 2-A.)

Additionally, the Purchase Agreement refers to the Employment Agreements a number of times, obligating Plaintiffs to deliver the executed Employment Agreements upon closing of the Purchase Agreement; referring to definitions in the Employment Agreement clarifying the nature of the intellectual property to be acquired; stating that Plaintiffs "shall be employed . . . upon the terms

1 and conditions set forth in the attached Employment Agreements"; excluding covenants or
2 agreements made by Plaintiffs pursuant to Employment Agreements from the indemnification
3 provisions of the Purchase Agreement; and conditioning Landi USA's obligation to close on the
4 Purchase Agreement upon the delivery of executed Employment Agreements. (Id. Ex. 1 §§ 2.2(f);
5 3.13(f); 5.6(a); 6.2(a); 8.7(f).) The Employment Agreements refer to and attach the Purchase
6 Agreement as an exhibit. (Id. Exs. 2-F, 3-F.) The terms of the Employment Agreement also state
7 that the Employment Agreements were bargained for in connection with "the acquisition of the
8 Employee's entire stock of Company . . . pursuant to [the] Stock Purchase Agreement." (Id. Exs. 2,
9 3 ¶ 3.) Most significantly, the Purchase Agreement contains an explicit integration clause, stating
10 that "[t]he recitals, schedules, exhibits and annexes to this Agreement are incorporated herein and
11 made a part hereof as if fully set forth at length herein." (Id. Ex. 1 § 10.7.) Both Employment
12 Agreements are attached to the Purchase Agreement as Exhibits "E" and "F."

13       Incorporations by reference can be limited in scope when the reference to another document
14 is for a narrow purpose. See Lincoln Welding Works, Inc. v. Ramirez, 98 Nev. 342, 345, 647 P.2d
15 381, 383 (Nev. 1982) ("[W]ritings which are made a part of the contract by annexation or reference
16 will be so construed; but where the reference to another writing is made for a particular and
17 specified purpose, such other writing becomes a part for such specified purpose only") (quoting
18 Orleans M. Co. v. Le Champ M. Co., 52 Nev. 92, 284 P. 307, 309 (Nev. 1930)). The Purchase
19 Agreement, however, contains the broadest possible incorporation language, stating that each of the
20 recitals, schedules, exhibits, and annexes is "incorporated herein and made a part hereof as if fully
21 set forth at length herein." (Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 10.7 (#13).) While
22 the other, more narrow references to the Employment Agreements are restricted to their specific
23 purposes, this is superseded by the all-encompassing language of the foregoing incorporation
24 clause. "[T]he incorporating contract must use language that is express and clear, so as to leave no
25 ambiguity about the identity of the document being referenced, nor any reasonable doubt about the
26

fact that the referenced document is being incorporated into the contract." <u>Northrop Grumman Information Technology, Inc. v. United States</u>, 535 F.3d 1339, 1344 (Fed. Cir. 2008). It is difficult to imagine language that more clearly and unambiguously expresses the intent to integrate documents into a contract than language that provides that the exhibits are "incorporated herein and made a part hereof as if fully set forth at length herein." (Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 10.7 (#13).)

Plaintiffs' argument that the "separation clause" in the Employment Agreements makes the Purchase Agreement and Employment Agreements separate contracts is unconvincing. The language in the Employment Agreements' separation provision is weak in comparison with the Purchase Agreement's integration clause, nowhere referring to an "integration" or "incorporation." The separation clause simply states that the parties' "duties, obligations and responsibilities" under the Employment Agreements are separate from those under the Purchase Agreement, making no reference to whether the contracts themselves are separate or integrated. A more natural reading of the separation clause, especially in light of the Purchase Agreement's strong integration language, is that the parties intended to separate the duties and obligations under each contract such that a breach of one obligation by either party would not affect the duty to perform another by the other party. This court finds no reason to stretch the language of this provision to directly conflict with language in the Purchase Agreement and create a broad separation of both contracts. "Contractual provisions should be harmonized whenever possible, and construed to reach a reasonable solution." <u>Eversole v. Sunrile Villas VIII Homeowners Ass'n</u>, 112 Nev. 1255, 1260, 925 P.2d 505, 509 (Nev. 1996) (internal citations omitted).

Nor does the provision in the Employment Agreements stating that the Employment Agreements "constitute the entire agreement between the parties," (Defs.' Mot. Stay and Compel Arbitration Exs. 2, 3 ¶ 9 (#13)), support Plaintiffs' argument that the Purchase Agreement and Employment Agreements are separate contracts. In fact, this provision supports integration of the

two contracts. Plaintiffs ignore the first part of the provision, which states, "This Agreement and its Exhibits, which constitute an integral part hereof, constitute the entire agreement between the parties." (Id.) The Purchase Agreement is attached as an exhibit to each of the Employment Agreements. (Id. Exs. 2-F, 3-F.) Thus, the Purchase Agreement is an "integral part" of the Employment Agreement, and together the documents, along with the other exhibits, "constitute the entire agreement between the parties." (Id. Exs. 2, 3 ¶ 9.)

Similarly, the jurisdictional provision in the Employment Agreements limiting actions arising out of the Employment Agreements to "courts of the State of Nevada" can be reconciled with the arbitration clause of the Purchase Agreement. The FAA does not completely preclude the involvement of courts in arbitration cases. Under the "two parallel devices for enforcing an arbitration agreement," Moses H. Cone Memorial Hosp., 460 U.S. at 22, courts have the power both to order the parties to engage in arbitration as well as "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." See 9 U.S.C. §§ 3-4. Thus, courts can hear a case with an arbitration clause, determine whether the issues are subject to the clause, stay proceedings on any issues covered under the arbitration clause and refer them to arbitration, and enter judgment after the arbitration has concluded. The jurisdictional language in the Employment Agreements can therefore be read as requiring the parties to go through this process in "courts of the State of Nevada" for all causes of action arising from both the Purchase Agreement and the Employment Agreements. The integration clause in the Purchase Agreement compels this conciliatory reading of the Employment Agreements' jurisdictional provision, and the "liberal federal policy favoring arbitration agreements," Moses H. Cone Memorial Hosp., 460 U.S. at 24, further supports this interpretation.

Thus, the Purchase Agreement and the Employment Agreements constitute one integrated contract, with the terms of each document applicable to the others. Actions relating to and arising out of both the Purchase Agreement and the Employment Agreements are therefore subject to the

arbitration clause of the Purchase Agreement.

### B. Whether Plaintiffs' Causes of Action Relate to or Arise out of the Purchase Agreement or Employment Agreement

The Purchase Agreement's arbitration clause covers "any unresolved controversy or claim arising from or relating to [the contract]." (Defs.' Mot. Stay and Compel Arbitration Ex. 1 § 10.11 (#13).) This "arising from" or "relating to" language is the broadest possible language subjecting matters to arbitration, State ex rel. Masto, 125 Nev. at 45 n.5, 199 P.3d at 833 n.5., and extends to all issues that "touch matters" covered under the contract. Simula, Inc., 175 F.3d at 720. Because the Purchase Agreement and Employment Agreements constitute a single integrated contract, any cause of action that touch matters covered under the Purchase Agreement, Employment Agreements, or both is subject to arbitration.

Plaintiffs' claim for fraud references and relies upon both the Purchase Agreement and the Employment Agreements. (Compl. ¶¶ 120-21 (#1-2).) Plaintiffs' actions seeking declaratory and injunctive relief reference and rely upon both the Purchase Agreement and Employment Agreements. (Id. ¶¶ 181, 183, 189, 190.) Plaintiffs' claims for constructive fraud, breach of contract, contractual breach of implied covenant of good faith and fair dealing, tortious breach of implied covenant of good faith and fair dealing, breach of fiduciary duties, intentional interference with contractual relations, and conspiracy reference and rely upon the Employment Agreements. (Id. ¶¶ 128, 151, 154-55, 158-60, 164-65, 169-72, 176.)

Plaintiffs' Breach of NRS Chapter 608 claim does not directly reference the Purchase Agreement or Employment Agreements, but the statute and the claim deal directly with the pay owed to Plaintiffs, which is covered under the Employment Agreements. (See Defs.' Mot. Stay and Compel Arbitration Ex. 2 ¶ 4; Ex. 3 ¶ 4 (#13).) Plaintiffs' claim for negligent misrepresentation does not directly reference the Purchase Agreement or Employment Agreements, but it bases its cause of action on "information and representations made to [Plaintiffs] by [D]efendants." (Compl.

10

¶ 135 (#1-2).) This vague and broad language is read naturally in the context of Plaintiffs' contractual claims to include both information and representations made in the Purchase Agreement and Employment Agreements as well as information provided by Defendants directly relating to the agreements. Similarly, Plaintiffs' claims for intentional and negligent infliction of emotional distress contain vague and broad references to "conduct" by the Defendants, which quite likely includes Defendants' alleged breaches of contract as well as their alleged misrepresentations of the agreements between the parties. (Id. ¶ 138, 144.)

Each of Plaintiffs' claims therefore touches matters covered under the Purchase Agreement and Employment Agreements, which constitute a single integrated contract. The entirety of Plaintiffs' Complaint (#1-2) is therefore subject to the contract's arbitration clause.

## IV.  Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Stay Proceedings and Compel Arbitration (#13) is GRANTED. This matter is hereby STAYED pending submission of Plaintiffs' claims to arbitration.

IT IS FURTHER ORDERED that the Clerk of the Court shall administratively close this matter pending arbitration. The case will be reopened administratively when either party notifies the court that the arbitration has been completed and any party wishes to proceed further in this court.

IT IS SO ORDERED.

DATED this 3rd day of August, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE